

03/31/2008

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| DAVID W. GALUBENSKI, | § | Case No. 05-44572 |
| | § | |
| Debtor. | § | Chapter 7 |
| | § | |
| CHRISTOPHER J. MOSER, TRUSTEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. No. 06-04041 |
| | § | |
| THE CECI – BATES GROUP, INC., | § | |
| | § | |
| Defendant. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The matter is before the Court following trial of the ORIGINAL COMPLAINT (the "Complaint") filed by Christopher J. Moser, Trustee (the "Trustee"), and the FIRST AMENDED ORIGINAL ANSWER AND COUNTERCLAIM (the "Counterclaim") filed by the Ceci – Bates Group, Inc. ("Ceci – Bates"). The Court has jurisdiction to enter a final judgment on the relief sought by the Complaint and Counterclaim pursuant to 28 U.S.C. §§1334(a) and 157(a), and this is a core proceeding in which the Court can enter a final judgment pursuant to 28 U.S.C. §§157(b)(2)(A), (B), (E) and (O). Having considered the Complaint, the Counterclaim, the evidence presented, and the applicable law, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a) and Federal Rule of Bankruptcy Procedure 7052.

# I. FINDINGS OF FACT

## A. Procedural Background

1. David Galubenski (the "Debtor") filed a petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") on August 26, 2005 (the "Petition Date"). The Court thereafter appointed Christopher J. Moser as the Trustee for the Debtor's bankruptcy estate.

2. The Trustee initiated this adversary proceeding by filing the Complaint on February 14, 2006. The Trustee seeks to recover on certain unpaid invoices issued by DavCo, a Texas corporation wholly owned by the Debtor, in the total amount of $94,597.12 that the Debtor caused to be assigned to the Trustee. The Trustee also seeks pre-judgment interest and attorneys' fees.

3. Ceci – Bates filed its original Counterclaim on April 21, 2006. Ceci – Bates denies that the Trustee is entitled to recover from it. Ceci – Bates also claims a right of setoff against any recovery had by the Plaintiff. The Counterclaim asserted by Ceci – Bates is based upon (a) sub-standard work performed by DavCo on a certain construction project, and (b) DavCo's failure to honor its warranty for the work done on that and other construction projects. Ceci – Bates' Counterclaim is for the sum of $131,904.97.

## B. General Factual Background

4. DavCo conducted business installing roofs on residential homes beginning in 2002. From 2002 until approximately December 31, 2003, DavCo was a subcontractor for several homebuilders, including Ceci – Bates. DavCo primarily provided materials and labor to Ceci – Bates by installing roofs for Ceci – Bates pursuant to oral contracts.

5. All of DavCo's work came with a five-year warranty. The Debtor testified that he intends to honor those warranties.

6. One of the homes built by Ceci – Bates was located at 303 Oakmont, Sherman, Texas (the "<u>Oakmont Home</u>"). DavCo installed the roof on this home pursuant to an oral contract with Ceci - Bates. However, DavCo incorrectly installed the roof, causing a series of leaks that damaged various components of the Oakmont Home, including the walls and flooring.

7. At trial, the parties disputed the pricing terms of their oral roofing contracts. The Debtor testified that DavCo never performed work for Ceci – Bates for a flat fee, but would bill Ceci – Bates based on the cost of each project. In contrast, Scott Bates, Ceci – Bates' co-owner, testified that the parties had an agreement for a $65 per square price (which included labor and materials) for all of DavCo's jobs for Ceci – Bates with the exception of the Oakmont Home, which required more expensive shingles.[1]

8. Each of DavCo's invoices includes charges for "material" and "labor" without specifying the cost of the shingles for that project or the number of shingles required. The Court, therefore, looks to the parties' testimony regarding the terms of their oral contracts and finds Scott Bates' testimony more credible. The parties had an agreement of $65 per square for DavCo's jobs for Ceci – Bates with the exception of the Oakmont Home.

9. After DavCo completed construction of the roof on the Oakmont Home in or around December of 2003, DavCo ceased doing business. DavCo's only shareholder, the Debtor, left Texas in early 2004 to take a series of jobs in Florida, Chicago and New Orleans. He returned to Denton, Texas in September of 2005 but went to New Orleans to

---

[1] A "square" is a nine-foot by nine-foot unit of roofing.

3

look for work in the construction industry in the aftermath of Hurricane Katrina in October of 2005.

10. After DavCo completed work on the Oakmont Home's roof, Ceci – Bates attempted unsuccessfully to contact DavCo so that DavCo could remedy the defects in the roof's construction. Ceci – Bates attempted to contact the Debtor directly as well as through third parties. Ceci – Bates ultimately paid other subcontractors to remedy the defects in the roof and the damage caused to the Oakmont Home by these defects. The total cost of repairing the damage to the Oakmont Home caused by the roof's defects was $27,311.87.

11. Ceci – Bates seeks to recover $5,649.00 in additional damages due to reallocation of their employees to coordinate repairs to the Oakmont Home's roof. This amount is based on Ceci – Bates' calculation of the time that the employees could have been spending on other jobs. Ceci – Bates' general manager testified that this number is accurate, but he did not explain how he arrived at it, nor did he provide any back-up or support for his calculation.

12. The roof's defects delayed the sale of the home by seven weeks. Ceci – Bates incurred additional interest expenses on its construction loan in the amount of $7,906.64. Because of the delays in completing the home caused by the roof's defects, Ceci – Bates renegotiated its contract with prospective purchasers of the Oakmont. Ceci – Bates reduced its contractual profit margin by $59,878.96. Additionally, Ceci – Bates has been unable to collect its final payment in the amount of $9,634.10 from the Oakmont Home's buyer as a result of the roofing defects. Ceci – Bates seeks $19,812 in additional damages as the estimated cost of replacing the roof on the Oakmont Home.

13. Ceci – Bates alleges that it is entitled to recover an additional $1,712.50 from DavCo as damages for DavCo's failure to honor its warranty on each of the roofs that DavCo installed for Ceci – Bates. However, Ceci – Bates failed to prove by a preponderance of the evidence that this figure reflects an accurate assessment of its damages for breach of warranty. Ceci – Bates did not present sufficient evidence to allow the Court to calculate the damages for any failure of DavCo to honor its warranty with respect to these roofs.

14. DavCo has forfeited its charter to do business in the state of Texas and has not engaged in any business since on or around December 31, 2003. The Debtor, as sole shareholder of DavCo, assigned DavCo's outstanding accounts receivable to the Trustee pursuant to Court Order on April 18, 2006. These accounts receivable included invoices that the Trustee argues are past due (the "Invoices") from Ceci – Bates for work that DavCo performed on several of Ceci – Bates' construction projects. These Invoices are summarized as follows:

| Job Number | Invoice Date | Amount ($) |
|---|---|---|
| G2009 | 1/22/2003 | 320.00 |
| G2016 | 2/20/2003 | 3,443.35 |
| G2021 | 4/1/2003 | 3,971.11 |
| G2036 | 4/11/2003 | 4,920.86 |
| G2040 | 5/7/2003 | 9,273.90 |
| G2208 | 5/13/2003 | 4,688.23 |
| G2207 | 5/14/2003 | 4,810.90 |
| G2334 | 6/15/2003 | 4,798.71 |
| G2399 | 6/24/2003 | 1,852.50 |
| G2395 | 6/24/2003 | 3,411.50 |
| G2435 | 7/10/2003 | 5,875.47 |
| G2503 | 8/29/2003 | 5,877.19 |
| G2507 | 9/29/2003 | 5,169.07 |
| G2546 | 10/9/2003 | 5,883.72 |
| G2545 | 10/18/2003 | 7,700.44 |
| G2575 | 10/21/2003 | 3,546.15 |
| G2600 | 11/21/2003 | 15,500.46 |

| G2600 | 11/21/2003 | 800.07 |
| G2571 | 12/1/2003 | 2,753.49 |
| | **TOTAL:** | 94,597.12 |

15. DavCo did work for contractors other than Ceci – Bates in 2003. In at least one subdivision, Fountain Creek, several other contractors were building at the same time as Ceci – Bates. Invoices for jobs #s G2036, G2040, and G2507 are for jobs that DavCo did in the Fountain Creek subdivision. However, the dates indicated on the Invoices do not match the dates on which Ceci – Bates was building in that subdivision. The Trustee failed to prove, by a preponderance of the evidence, that these Invoices are for projects on which the Debtor worked for Ceci – Bates.

16. The Debtor testified that he performed work on job #s G2009, G2016, G2021, G2036, G2040, G2334, G2399, G2435, G2503, and G2507 but could not remember who at Ceci – Bates hired him. Scott Bates testified that these were not Ceci – Bates' properties. The Trustee failed to prove, by a preponderance of the evidence, that these Invoices are for projects on which the Debtor worked for Ceci – Bates.

17. Taking into account the credibility of the witnesses, the Court finds that the Invoices for job #s G2009, G2016, G2021, G2036, G2040, G2334, G2399, G2435, G2503, G2507, and G2575 were not for services rendered to Ceci – Bates and do not constitute valid unpaid claims against Ceci – Bates.

18. The Debtor testified that the Invoices for job #s G2208, G2207, G2395, G2546, G2545, G2600, and G2571 were billed according to a verbal agreement with the owners of Ceci – Bates. These Invoices total $45,548.81. In contrast, Ceci – Bates estimated that it only owes DavCo $31,975.07 in aggregate for jobs #s G2208, G2207, G2395,

6

G2546, G2545, and G2600. This estimate is based on the records of Ceci – Bates and assumes a price of $65 per square for all of these jobs.

19. Job # 2600 was the job number for the Oakmont Home. Scott Bates testified, credibly, that the price for the Oakmont Home was greater than $65 per square. Ceci – Bates erred in adjusting the invoiced price downward to $65 per square for job # G2600, and the two Invoices for job # G2600 should be allowed in the amount stated on the Invoices.

20. The Invoice for job #G2571 represents work that DavCo performed for Scott Bates' mother. This amount was erroneously billed to Ceci – Bates. The Court, therefore, concludes that Invoice does not represent a valid unpaid claim against Ceci – Bates.

21. The Court finds, based on a preponderance of the evidence, taking into account the credibility of the witnesses, that the Invoices for jobs #s G2208, G2207, G2395, G2546, G2545, and G2600 represent valid unpaid claims against Ceci – Bates in the aggregate amount of $35,410.53.

22. The Invoices were not presented in the manner in which DavCo normally presented invoices to Ceci – Bates for payment. Ceci – Bates did not receive the Invoices or any other demand for payment from the Debtor or the Trustee prior to the initiation of this adversary proceeding. The Debtor and/or DavCo did not file any lien notices or mechanic's liens in connection with DavCo's work on the real properties that were the subject of the jobs indicated on the Invoices.

23. For the foregoing reasons, the Court finds and concludes that the Invoices for job #s G2009, G2016, G2021, G2036, G2040, G2334, G2399, G2435, G2503, G2507,

7

G2571, and G2575 do not represent valid unpaid claims against Ceci – Bates. The Court further finds and concludes that the Invoices for job #s G2208, G2207, G2395, G2546, G2545, and G2600 represent valid unpaid claims against Ceci – Bates in the aggregate amount of $35,410.53.

## II. CONCLUSIONS OF LAW

24. Having determined that the Invoices represent valid claims against Ceci – Bates in the aggregate amount of $35,410.53, the Court now turns to the Counterclaim asserted by Ceci – Bates. Ceci – Bates' Counterclaim consists of a single count titled "Malfeasance." In its Counterclaim, Ceci-Bates appears to assert several different causes of action for damages based on (i) the costs incurred by Ceci – Bates in repairing the Oakmont Home, (ii) Ceci – Bates' reduced profit margin on the Oakmont Home, (iii) the extra interest expenses that Ceci – Bates incurred on the Oakmont Home while repairs were being completed, and (iv) the costs incurred by Ceci – Bates on each home that DavCo roofed for Ceci – Bates due to DavCo's anticipated failure to honor its warranty.

### A. Whether the Texas Residential Construction Commission Act Or the Residential Construction Liability Act Apply to this Case

25. As a preliminary matter, the Trustee argues that Ceci – Bates may not assert its Counterclaim against him because Ceci – Bates has not complied with the notice provisions of the Texas Residential Construction Commission Act (the "TRCCA") and the Residential Construction Liability Act (the "RCLA"). However, the TRCCA only applies to disputes between builders and homeowners, see TEX. PROP. CODE §426.001(a), and, as the Trustee admits in his post-trial brief, this adversary proceeding does not involve a homeowner. The Court, therefore, concludes that the TRCCA does not apply to Ceci – Bates' Counterclaim.

8

26. Similar to the TRCCA, the RCLA applies to claims by homeowners against contractors for construction defects. Further, the RCLA's notice provisions do not apply to a complaint asserting a construction defect as a counterclaim. *See* TEX. PROP. CODE §27.004(c). The Court, therefore, concludes that the RCLA does not apply to Ceci – Bates' Counterclaim. Even if the RCLA and its notice provisions did apply, the Court finds that Trustee failed to establish that the extensive efforts of Ceci – Bates to contact the Debtor were insufficient.

### B. Whether the Trustee Assumed DavCo's Obligations to Ceci – Bates

27. The Trustee also argues that, under Texas law, an assignee must expressly or impliedly assume the assignor's obligations for the assignee to be held liable for the obligations. *See Jones v. Cooper Ind., Inc.*, 938 S.W.2d 118, 124 (Tex. App. – Houston [14th Dist.] 1996, writ den'd). The Trustee in this case has not expressly assumed DavCo's obligations to Ceci – Bates. Thus, the Trustee argues that Ceci – Bates' may not recover from the bankruptcy estate for DavCo's faulty work.

28. However, the fact that the Trustee has not assumed DavCo's obligations to Ceci – Bates does not necessarily negate Ceci – Bates' Counterclaim. "An assignee's right to enforce a contract against the obligor is subject to all limitations of the obligee's right, to all defenses, set offs, and counterclaims of the obligor that would have been available against the obligee had there been no assignment, if the defenses and set offs are based on facts which existed at the time of the assignment." *Trueheart v. Braselton*, 875 S.W.2d 412, 415 (Tex. App. – Corpus Christi 1994, no writ) (citing *Vogt v. Jones*, 396 S.W.2d 539, 540 (Tex. Civ. App. – Fort Worth 1965, no writ)). Since Ceci – Bates' Counterclaim is based on facts that existed at the time of the Debtor's assignment of the

9

right to collect on the Invoices to the Trustee, Ceci – Bates may assert its Counterclaim as a defense to the Trustee's Complaint.

### C. Whether Limitations Has Run on the Counterclaim

29. The Trustee argues that the applicable statute of limitations has run on Ceci – Bates' Counterclaim, and, therefore, the Counterclaim is barred.[2] However, the applicable statute of limitations does not apply to defenses which would operate as a negation of the plaintiff's asserted right to recover. *See Hennigan v. Heights Savings Ass'n,* 576 S.W.2d 126, 130 (Tex. Civ. App. - Houston [1st Dist.] 1979, writ ref'd n.r.e.). Moreover, Texas Civil Practices and Remedies Code ("TCPRC") §16.069 provides that a counterclaim, arising out of the same transaction or occurrence that is the basis of an action, may be filed on the date the answer is required, or within thirty days thereafter, even though as a separate action the claim would be barred by statute of limitations.

30. "The question of whether an answer sets up a counterclaim or is merely defensive must be determined by the facts alleged, not by the name given the plea or by the particular form of the prayer for relief." *Flukinger v. Straughan*, 795 S.W.2d 779, 787 (Tex. App. – Houston [14th Dist.] 1990, writ den'd).

> The rule in [Texas] is that where the subject matter of a defense interposed by the defendant constitutes an independent cause of action that does not go to the foundation of the plaintiff's demand, it cannot effect a reduction of the amount of the plaintiff's recovery except by way of set-off, and the statutes of limitation are available to the plaintiff in respect to such defense. On the other hand, if the subject matter of the defense is of an intrinsically defensive nature, which, if given effect, will operate *immediately* as a negation of the plaintiff's asserted right to recover, or in

---

[2] Under Texas law, different limitations periods apply to contract and tort causes of action. The statute of limitations for a tort cause of action is two years. TEX. CIV. PRAC. & REM. CODE §16.003(a). The statute of limitations to recover money for a breach of contract or warranty is four years. TEX. CIV. PRAC. & REM. CODE §16.004(a)(3); *D. Wilson Construction Co. v. Cris Equipment Co., Inc.*, 988 S.W.2d 388, 397 (Tex.App. – Corpus Christi 1999).

> abatement, either wholly or partially of the amount claimed, the statute of limitations does not apply.

50 TEX. JUR. 3d, Limitation of Actions §18 (quoting *Flukinger*, 795 S.W.2d at 787).

> A test for making the determination is to inquire whether the defendant could have maintained a suit to enforce the claim before suit was brought by the plaintiff. If the defendant could have maintained such an independent suit, the claim will be regarded as a setoff or counterclaim. If the suit could not have been maintained, it is a defensive plea.

*Flukinger*, 795 S.W.2d at 787 (citing 67 TEX. JUR. 3d Setoffs, Counterclaims and Cross Actions §52). *See also Budge v. Post*, 544 F.Supp. 370, 384 (N.D. Tex. 1982) ("[A] setoff is legally distinguishable from a payment because the former arises where the defendant could have maintained an independent suit …. One purpose of the distinction is that setoffs, unlike payments, are subject to statutes of limitations.") (citations omitted).

31. Here, the two Invoices for the Oakmont Home job (the "<u>Oakmont Invoices</u>") in the total amount of $15,500.46 arise from the same transaction as Ceci – Bates' Counterclaim for (i) repairs on the Oakmont Home in the amount of $27,311.87 and (ii) the reallocation of its employees to repair the Oakmont Home in the amount of $5,649.00. Because these claims arise from the same transaction, they serve to immediately negate each other. *See Flukinger*, 795 S.W.2d at 787 (citation omitted). The Court, therefore, concludes that the foregoing elements of Ceci – Bates' Counterclaim are a defensive plea with respect to the Oakmont Invoices and, as such, are not subject to the applicable statute of limitations.[3]

---

[3] Alternatively, because the Counterclaim for the repair of damages to the Oakmont Home arose from the same transaction as the Oakmont Invoices, TCPRC §16.069 operates to exempt the Counterclaim from any statute of limitations with respect to the Oakmont Invoices. *See* TEX. CIV. PRAC. & REM. CODE §16.069(a) ("If a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation on the date the party's answer is required.").

32. With respect to the remaining elements of Ceci – Bates' Counterclaim, Ceci – Bates' Counterclaim does not *immediately* negate the Trustee's recovery on the Oakmont Invoices or the other Invoices (the "Non-Oakmont Invoices"). *See Flukinger*, 795 S.W.2d at 787. Ceci – Bates must take two steps to set off the remaining elements of its Counterclaim against any recovery the Trustee obtains on the Invoices -- (i) obtain a judgment against DavCo for damages associated with the Oakmont Home, and (ii) set off that judgment against any judgment in favor of the Trustee. The Court, therefore, concludes that remaining elements of the Counterclaim are not a purely defensive plea and are subject to the applicable limitations period(s) under Texas law. *See id.* This is true even if Ceci – Bates only seeks to limit its relief to offsetting the Trustee's recovery rather than obtaining an affirmative recovery against the Trustee. *See Bright & Co. v. Holbein Family Mineral Trust*, 995 S.W.2d 742, 747 (Tex. App. – San Antonio 1999, pet den'd).

### D. Whether Ceci – Bates Established a Breach of Warranty Claim

33. As previously discussed, Ceci – Bates seeks damages for DavCo's breach of its warranty on each property roofed by DavCo. As noted *supra*, the limitations period for a breach of contract or warranty cause of action is four years in Texas. The Court, therefore, concludes that Ceci – Bates' Counterclaim for breach of warranty is not time-barred under Texas law. Inasmuch as the Counterclaim for breach of warranty is not time-barred, the Court does not need to decide whether TCPRC §16.069 applies to the Counterclaim.

34. With respect to the merits of Ceci – Bates' Counterclaim for breach of warranty, Ceci – Bates failed to prove, by a preponderance of the evidence, the damages that it has

incurred or will incur on each roof that DavCo installed as a result of any failure of DavCo to honor its warranty. The Court, therefore, concludes that Ceci – Bates' Counterclaim for breach of warranty should be disallowed.

### E. Whether Ceci – Bates Established a Claim for Reduced Profits on the Sale of the Oakmont Home

35. In its Counterclaim, Ceci – Bates seeks damages based on its agreement to finance the cost of the Oakmont Home until the repairs were completed and the buyer was able to purchase the home. Ceci – Bates also seeks damages based on its reduction of the sales price for the Oakmont Home. Ceci – Bates offered testimony at trial that it lowered its profit margin because it was concerned that the buyer would walk away from the deal, leaving Ceci – Bates as the responsible party on the home's construction loan until it could find a replacement buyer.

36. "It is the general rule that losses arising from collateral contracts may not be regarded as arising out of the breach of the contract upon which the action is founded … [because] '…such damages are not presumed, as a matter of law, to have been in the contemplation of the parties.'" *Longview Constr. and Dev., Inc. v. Loggins Constr. Co.*, 523 S.W.2d 771, 777 (Tex. Civ App. – Tyler 1975, writ dism'd by agreement) (citing *Iowa Mfg. Co. v. Baldwin*, 82 S.W.2d 994 (Tex. Civ. App. – Eastland 1935, dism'd); 25 C.J.S. Damages s 24c, p.671)). Here, Ceci – Bates failed to show that DavCo or the Debtor knew of Ceci – Bates' agreement regarding the financing of the Oakmont Home's construction or its contractual profit margin with the home's buyers. The Court, therefore, concludes that Ceci – Bates' claim for additional interest expenses on the home and the difference in Ceci – Bates' original and re-negotiated profit margin on the home should be denied.

### F. Whether the Trustee May Recover from Ceci – Bates

37. As previously discussed, the Invoices represent valid claims against Ceci – Bates in the aggregate amount of $35,410.53. With respect to the portions of its Counterclaim relating to the Oakmont Home, Ceci-Bates established that DavCo is liable to it in the amount of $27,311.87. Ceci – Bates did not, however, establish the amount of its damages as a result of the reallocation of its employees in connection with the repairs on the Oakmont Home. Accordingly, pursuant to Bankruptcy Code §553(a) and Texas law, Ceci – Bates will be permitted to offset $27,311.87 against the two Invoices in the total amount of $16,300.53 for the Oakmont Home. *See* 11 U.S.C. §553(a). *See also Bonham State Bank v. Beadle*, 907 S.W.2d 465, 468 (Tex. 1995) ("[T]here is no doubt of the power of courts independent of statute to set off mutual judgments against each other.") (citation omitted). The Court, therefore, concludes that the Trustee's claim against Ceci – Bates for the Non-Oakmont Invoices should be allowed in the net amount of $19,110.00 plus pre- and post-judgment interest, as discussed more fully below.

### G. Attorneys' Fees and Pre-Judgment Interest

38. The Trustee seeks his attorneys' fees as permitted by TCPRC §38.001 *et seq*. However, since neither the Trustee nor the Debtor presented the Invoices to Ceci – Bates for payment prior to the initiation of this adversary proceeding, the Trustee may not recover his attorneys' fees under this provision. *See* TEX. CIV. PRAC. & REM. CODE §38.002. Presentment of a claim under TCPRC § 38.002 is required to allow the person against whom it is asserted an opportunity to pay it before incurring an obligation for attorney's fees. *See Jones v. Kelley,* 614 S.W.2d 95, 100 (Tex. 1981). *See also Jim Howe Homes, Inc. v. Rogers*, 818 S.W.2d 901, 904 (Tex. App. – Austin 1991, no writ)

("Neither the filing of a suit nor the allegation of a demand in the pleadings, can, without more, constitute presentment of a claim [for purposes of TCRPC §38.002].") (citation omitted).

39. Under Texas law, a prevailing party receives prejudgment interest as a matter of course. *See Apache Corp. v. Dynegy Midstream Services, Ltd.*, 214 S.W.3d 554, 566 (Tex. App. – Houston [14th Dist.] 2006, no writ). Pre-judgment interest runs from the date a defendant receive written notice of a claim. *See* TEX. FIN. CODE 304.104. The rate of pre-judgment interest is calculated as simple interest and is based upon the post-judgment interest rate applicable at the time of the judgment. *See Johnson & Higgins, Inc. v. Kenneco Energy,* 962 S.W.2d 507, 528 (Tex. 1998). Thus, in this case, the Trustee is entitled to pre-judgment interest on the allowed amount of his claim at a rate of 6.0% from March 23, 2006, the date the Trustee served Ceci – Bates with the Complaint, through the entry of the Court's judgment in this adversary proceeding.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that the Trustee is entitled to recover the amount of the Invoices due and owing from Ceci – Bates less the amount Ceci – Bates is entitled to recover on its Counterclaim, plus pre- and post-judgment interest. A Judgment consistent with these Findings of Fact and Conclusions of Law will be entered separately. To the extent any of the Court's findings of fact are construed as conclusions of law, they are hereby adopted as such. Likewise, to the extent any of the Court's conclusions of law are construed as findings of fact, they are hereby adopted as such.

Signed on 3/31/2008

*Brenda T. Rhoades*   MD
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE